UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE:

SKAGIT PACIFIC CORPORATION,

Debtor.

PETER H. ARKISON, solely in his capacity as Chapter 7 Trustee,

Plaintiff,

v.

FRONTIER BANK,

Defendant.

District Court No. C05-1167RSM

Bankruptcy Court No. 02-25027

Adversary Case No. 04-10034

ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

This matter is before the Court on appeal from a judgment of the United States Bankruptcy Court. Defendant Frontier Bank appeals the judgment in favor of plaintiff Trustee in the matter of the bankruptcy of debtor Skagit Pacific Corporation. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a) and, for the reasons set forth, now AFFIRMS the decision of the Bankruptcy Court.

**BACKGROUND**

The following is a restatement of the Bankruptcy Court's findings of fact. Debtor Skagit Pacific Corporation ("Debtor") filed a Chapter 11 petition on December 11, 2002. The case was converted to Chapter 7 on July 21, 2003, whereupon the Plaintiff Trustee was appointed. At the time the Debtor filed

its Chapter 11 petition, Defendant Frontier Bank (the "Bank") held a security interest in the Debtor's inventory, chattel paper, accounts, equipment and general intangibles. Also at the time of its bankruptcy filing, the Debtor was the registered owner of certain trucks and trailers, including a 1986 Kenworth truck, a 1991 Olympic 3-axle trailer, a 1978 Mount trailer, and a 1998 Skagit 2-axle trailer (collectively, the "Titled Equipment").

In August 2002, prior to the bankruptcy filing, the Bank took possession of the certificates of title for the Titled Equipment. That transfer of possession was not intended by the Bank and the Debtor to effect a transfer of ownership of the Titled Equipment, but rather was part of the overall secured transaction between the Bank and the Debtor. The Bank acquired no indicia of ownership at any time. Events and representations subsequent to August 2002 indicate that the Debtor believed it was the owner of the Titled Equipment and that the Bank believed the Titled Equipment was its collateral securing the Debtor's obligation.

Even if the change of possession was intended by the parties to effect a change in ownership, ownership in fact did not change, since the Bank did not file the documents required under Washington law to change ownership of a motor vehicle, and possession of the Titled Equipment remained with the Debtor. At the time the Titled Equipment was sold, the Debtor was the owner of the Titled Equipment.

On or about January 13, 2003, the Debtor sold the 1986 Kenworth truck and the 1991 Olympic trailer to Mr. Ochiltree for a total of $28,000. The Bank received $26,000 of the proceeds of sale post-petition. Neither the sale of the truck and trailer nor the payment to the Bank was ever approved by the Bankruptcy Court.

On or about January 30, 2003, the Debtor sold the 1978 Mount trailer, the 1998 Skagit trailer, and numerous pieces of non-titled equipment, to Angelo Bellizzi, for a total of $62,000. The Bank received the entire $62,000 proceeds of sale. Neither the sale of the trailers nor the payment to the Bank was ever approved by the Bankruptcy Court. The Bank was never listed as either registered owner or legal owner on the certificates of title for the Titled Equipment.

All proceeds from these two sales were deposited into the Debtor's "bankcontrol" account with the Bank. The Bank applied $24,000 of the $26,000 from Mr. Ochiltree against the Debtor's loan, and advanced $2,000 back to the Debtor's checking account. The Bank applied $54,500 of the $62,000 from

Mr. Bellizzi against the Debtor's loan, and advanced $7,500 back to the Debtor's checking account. The sale proceeds not applied to the Debtor's loan with the Bank were paid to the Debtor by the Bank.

On March 15, 2004, the Trustee filed a complaint against the Bank to recover the proceeds from the sale of the Titled Equipment under 11 U.S.C. § 549. The Bank filed an answer denying that the delivery of the proceeds from the sale of the Titled Equipment to the Bank constituted an unauthorized postpetition transfer and raising several affirmative defenses. On October 1, 2004, the Trustee filed a motion for summary judgment which was subsequently denied.

The matter proceeded to trial on April 22, 2005. United States Bankruptcy Judge Philip H. Brandt heard the testimony of Douglas Peterson and Jean Peterson (the Debtor's principals), and Peter Sontra (the Bank's loan officer). The Court also admitted, without objection, all exhibits offered by both sides. The Court issued an oral ruling agreeing with the Trustee's position, adopting the Trustee's proposed findings of fact, and authorizing entry judgment in favor of the Trustee. Judgment in the amount of $57,938.54 was entered on June 1, 2005. The Bank timely appealed the Bankruptcy Court's ruling.

## ISSUES ON APPEAL

First, the Bank contends that the sale of the Titled Equipment did not involve property of the bankruptcy estate. The Bank argues that the Bankruptcy Court improperly concluded that the Bank's failure to register title in its name precluded transfer of ownership due to the Trustee's status as bona fide purchaser. The Bank also argues that the transfer of proceeds of sale of the equipment was made pursuant to court authority. The Trustee, in response, argues that title to the equipment was never properly transferred to the Bank, and the transfer of proceeds of sale occurred postpetition and without authorization by either the Bankruptcy Court or Title 11.

Second, the Bank argues that it possessed a perfected security interest in the Titled Equipment because the Titled Equipment is inventory. The trustee argues that the Bank did not possess a perfected security interest in the Titled Equipment because it does not qualify as inventory.

Third, the Bank argues it is entitled to assert a new value defense due to policy considerations. The Trustee responds that there is no new value defense under 11 U.S.C. § 549 and this Court should not create new defenses.

Fourth, the Bank argues that the Bankruptcy Court improperly included commission or cost of sale as part of the award to the Trustee because this allows a double recovery. The Trustee contends that the Bank should not get credit for commission/cost of sale because no law allows recovery for unauthorized postpetition transfers.

Finally, the Bank argues that it was not an initial transferee under 11 U.S.C. § 550. The Trustee asserts that the Bank was indeed the initial transferee.

**STANDARD OF REVIEW**

The Bankruptcy Court's conclusions of law are reviewed *de novo* by the courts of appeal. *Matter of CHG International, Inc.,* 897 F.2d 1479 (9th Cir. 1990). The Bankruptcy Court's findings of fact are reviewed for clear error. *In re Cisneros,* 994 F.2d 1462, 1464 (9th Cir. 1993).

**ANALYSIS**

**A. Ownership of the Titled Equipment**

The Bank contends that it owned the Titled Equipment as of the date it took possession of the certificates of title, and thus had the right to sell that equipment and retain the proceeds. It argues that the Bankruptcy Court improperly concluded that the Bank's failure to register title in its name precluded transfer of ownership, and that the Bankruptcy Court's designation of the Trustee's status as bona fide purchaser of the property was erroneous. According to the Bank, the transfer of the Titled Equipment was valid despite the failure to properly register the certificate of title. The Bank further argues that the Bankruptcy Court's factual determination that ownership of Titled Equipment was not transferred to the Bank was clearly erroneous because the Bankruptcy Court ignored the testimony of Pete Sontra, ignored the fact that the Bank had entered into the written sale agreement with Angelo Bellizzi, and improperly relied on Doug Peterson's testimony as the primary source of its ruling.

The Bank argues that ownership of the Titled Equipment is controlled by the Uniform Commercial Code, not by vehicle registration statutes. Specifically, the Bank cites to RCW 62A.2-401(3), which states,

> Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
>
> (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such document. . . .

RCW 62A.2-401(3)(a). The Bank cites to *Crawford v. Welch*, 8 Wash. App. 663 (1973) as supporting the position that delivery of the title to the equipment was sufficient to pass title, without registration in the Bank's name, and without possession of the equipment by the Bank. In *Crawford,* the court indeed found that delivery of the certificates of title was sufficient to pass title under RCW 62A.2-401(3). "Registration and title certificates are only prima facie evidence of ownership, which evidence is rebuttable." *Id.* at 664. However, the court went on to state,

> The factual situation concerning the physical possession of the vehicles, just like the factual situation concerning whose name was on the registration and title certificates, is only a fact to be taken into consideration by the trier of fact and is not conclusive of the issue of ownership. These are questions of fact resolved by the trial court upon the basis of the veracity and credibility of witnesses.

*Id.* Thus, the trier of fact must look to all the indicia of ownership, not simply the registration and title certificate.

Here, the Bankruptcy Court concluded, on the basis of all the evidence presented, that ownership of the Titled Equipment was not transferred to the Bank when the Debtor delivered the certificates of title in August 2002. Instead, the Bankruptcy Court concluded that this delivery was simply part of the secured transaction between the Bank and the Debtor. In Finding of Fact 8, the Bankruptcy Court stated that "[e]vents and representations subsequent to August 2002 indicate that the Debtor believed it was the owner of the Titled Equipment and that the Bank believed the Title Equipment was its collateral securing the Debtor's obligation." Excerpts of Record ("EOR") 183. Among these "events and representations" which appear in the record and were considered by the Bankruptcy were the following: (1) subsequent to August 2002, the Debtor listed the Titled Equipment as his own property on the schedules, financial reports, and other filings with the Bankruptcy Court; (2) there was no written Bill of Sale; (3) the Bank took none of the steps required under state law when title to a vehicle is transferred, such as the execution of an odometer statement, report of sale, or application for a Certificate of Title; (4) the Bank did not obtain insurance for the Titled Equipment; (5) the Seller listed on the Bills of Sale when the Titled Equipment was sold in January 2003, was the Debtor, not the Bank; and (6) the Bank did not reduce the amount of debt owed it by the Debtor at the time it received the certificates of title from the Debtor, but rather did so after the Titled Equipment was sold to third parties and the proceeds of sale were turned over to the Bank. In light of this evidence and the testimony of the Debtor, the Court finds that the

Bankruptcy Court did not err in crediting this evidence over the self-serving testimony of officers of the Bank, to arrive at the conclusion that ownership of the Titled Equipment was not transferred to the Bank in August 2002.

The Bank also argues that the Bankruptcy Court's statement regarding the status of the trustee as a bona fide purchaser was clearly erroneous, because a bankruptcy trustee holds that status only with respect to real, not personal, property. The Bankruptcy Court did make the following statement in the oral ruling:

> The trustee, of course, is under bankruptcy law a bonafide purchaser. And I did consider the Washington case, I think it's *Crawford v. Welsh*, that was mentioned in argument where an undocumented transferee prevailed over a judgment lien creditor. But I don't think that that works for a bonafide purchaser, as I understand Washington law.

EOP 323. However, even if the Bank is correct that this statement regarding the status of the Trustee is incorrect with respect to the Titled Property, this Court finds that the statement was mere dicta and was not an integral part of the Bankruptcy's conclusions regarding ownership of the Titled Property. The Bankruptcy Court clearly stated that its conclusion was based upon "events and representations" by the Debtor and the Bank. EOR 183. The later status of the Trustee, whether bona fide purchaser or not, was irrelevant to the Bankruptcy Court's evidence-based conclusions regarding the ownership status of the Titled Equipment in and after August 2002. Thus the error of the Bankruptcy Court, if any, was harmless.

Since the Titled Equipment was the property of the Debtor, not the Bank, the postpetition transfer of the proceeds of sale was improper unless authorized by statute or by the Bankruptcy Court. The relevant statute provides that

> Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate---
>
> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

The Bank asserts that the postpetition sale of the Titled Equipment and transfer of the proceeds of sale to the Bank were duly authorized by the Bankruptcy Court. However, the Debtor's attorney did not

send notice of the sale to the other creditors until January 30, 2003, two weeks after the initial sale of equipment to Mr. Ochiltree and the same day as the sale of equipment to Mr. Bellizi. The Debtor on that day obtained an Order of the Bankruptcy Court granting Debtor's application to limit notice of unspecified sales to the Bank, the Trustee, and the ten largest unsecured general creditors. EOR 90, 92. However, due to the untimeliness of this application with respect to the two sales at issue here, the Bankruptcy Court later made specific findings of fact with respect to each sale that neither the sale nor the payment of the proceeds of the sale to the Bank was "ever approved by the Bankruptcy Court." EOR 182.

The Bank argues that "the transfers cannot fairly be characterized as unauthorized" because those creditors who were entitled to notice of the sale did receive notice, and none of them objected. Appellant's Brief, p. 12. The Bank also asserts that there is no specific timing requirement for the giving of notice. However, nowhere does the Bank demonstrate that the Bankruptcy Court's findings that the notice was untimely were clearly erroneous.

The findings of the Bankruptcy Court with respect to ownership of the Title Equipment and the failure of the Debtor to obtain authorization for its sale are well-supported by evidence in the record and are not erroneous. The decision of the Bankruptcy Court that the transfers of the proceeds of sale to the Bank were avoidable by the Trustee is accordingly affirmed.

**B. Perfected Security Interest & Inventory**

Next, the Bank argues that in the event this Court determines that it had only a security interest in the Titled Equipment, that security interest should be treated as perfected, because the Debtor was no longer using the equipment in business and was only holding it as inventory. The Bank contends that its UCC Financing Statement was sufficient to perfect its security interest under RCW 62A.9-302.

The nature, validity and perfection of security interests are determined by state law. *Butner v. U.S.,* 440 U.S. 48, 55 (1979). Generally, Washington law requires a certificate of ownership listing the secured party in order to perfect a security interest in a vehicle. RCW § 46.12.095.[1] However, an

[1] A security interest in a vehicle other than one held as inventory by a manufacturer or dealer and for which a certificate of ownership is required is perfected only by compliance with the requirements of RCW § 46.12.103 [requiring party to submit a transitional ownership record to the Department of Motor

exception is made for manufacturers and dealers who hold vehicles or equipment in inventory. Inventory is defined as goods, other than farm products, which are leased by a person; held for sale or lease; are furnished under a contract of service; or consist of raw materials, work in process, or materials used or consumed in business. RWC 62A.9A-102(a)(48).

The only evidence the Bank offers to support its argument is a statement by Jean Peterson, one of the owners of Skagit Pacific, that "the intent was to be able to sell the vehicles and gain funds to pay the bank." EOR 267. However, the Debtor did not list the Titled Equipment on the bankruptcy schedules under the "inventory" category, but rather under the category of "automobiles, trucks, trailers, and other vehicles and accessories." EOR 334. Further, there is no question that the trucks and trailers were originally acquired by the Debtor for use in business. The Bankruptcy Appellate Panel, in a companion case, has rejected the Bank's argument:

> While the UCC allows the use of the collateral rather than its intrinsic nature to determine its classification for perfection purposes, it is the debtor's intended use at the time of purchase that controls if the actual use and the intended use are in conflict. *McGehee v. Exch. Bank & Trust, Co.,* 561 S.W.2d 926, 930 (Tex.Civ.App.1978). In the Petersons' declarations, they repeatedly refer to the vehicles as equipment (not inventory), suggesting the vehicles were actually intended to be equipment.

*In re Skagit Pacific Corporation,* 316 B.R. 330, 341 (9th Cir. BAP 2004).

The Bankruptcy Court thus correctly concluded that the Titled Equipment was not inventory, and that the Bank therefore did not have a perfected security interest in it. The rulings of the Bankruptcy Court on this point are accordingly affirmed.

**C. New Value Defense**

The Bank contends that it is entitled to assert a "new value" defense to set off the avoided transfers because it subsequently advanced $53,529.07 to the Debtor to fund Chapter 11 operations. There is no merit to this argument.

The new value defense is utilized as a defense to an 11 U.S.C. § 547 preference claim. The Bank argues for a new value defense under 11 U.S.C. § 549. Section 549 allows the trustee to recover all postpetition transfers, except those that fit within the statute's narrow exceptions. 11 U.S.C. § 549.

---

Vehicles listing the name and address of the secured interest holder].

There is no exception in that statute for subsequent new value given.

The Bankruptcy Court noted in its oral ruling that Congress clearly knew how to set up a subsequent new value defense but chose not to do so here. EOR 324. It is not for this Court to create an exception when Congress chose not to. *See FCC v. NextWave Personal Communications, Inc.,* 537 U.S. 293, 302 (2003) (where Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly). Here, Congress provides no exception of the type requested by the Bank under § 549. Therefore, the Bank is not entitled to assert a new value defense. The ruling of the Bankruptcy Court on this issue is accordingly affirmed.

**D. Commission/Cost of Sale**

The Bank argues that judgment against it should be reduced by $5,628.50, the amount returned by the Bank to the Debtor as reimbursement for the cost of preparing the Titled Equipment for sale. The Bankruptcy Court denied the Bank a setoff or credit for this amount, finding as a matter of law that it was a subsequent new advance for which § 549 does not permit a defense. EOR 184.

The evidence presented at trial demonstrated that the $5,628.50 was remitted back to the Debtor, subsequent to the Debtor's payment of the proceeds of sale to the Bank. The Bank has cited no legal authority for the argument that it should be allowed credit for this "cost of sale" against the Trustee's recovery for the unauthorized postpetition transfers. The Ruling of the Bankruptcy Court on this issue is accordingly affirmed.

**E. Initial Transferee**

Finally, the Bank asserts that it was not the initial transferee of the challenged transfers under 11 U.S.C. § 550; it contends that the purchasers of the Titled Equipment, Mr. Ochiltree and Mr. Bellizi, were the initial transferees, and the Bank was a subsequent transferee.

A trustee's right to recover differs dramatically depending on which section of 11 U.S.C. § 550 is applicable. Under the first section, the trustee's right to recover from an initial transferee is absolute. *Schafer v. Las Vegas Hilton Corp. (In re Video Depot),* 127 F. 3d 1195, 1197-98 (9th Cir. 1997). Under the second section, the trustee may only recover if the subsequent transferee did not accept the transfer for value, in good faith, and without knowledge of the transfer's avoidability. *Id.* The good faith exception is only available to subsequent transferees. The term transferee is not defined by the

Bankruptcy Code but it is generally accepted that a transferee is one who, at a minimum, has dominion over the money or other asset and has the right to put the money to one's own purposes. *Id.* at 1198.

The evidence shows that the $62,000 check from Mr. Bellizzi was made payable to the Bank. The checks from Mr. Ochiltree were deposited directly into the Debtor's bankcontrol account and then applied by the Bank against the Debtor's loans. The Bank was the thus direct recipient of the sales proceeds, and the initial transferee. Pursuant to § 550(a)(1) "the entity for whose benefit such transfer was made" is treated as an initial transferee. 11 U.S.C. § 550(a)(1).

The Court notes that the Bank did not pursue this argument in reply and thus appears to have abandoned it. The ruling on the Bankruptcy Court on this issue is accordingly affirmed.

**CONCLUSION**

For the reasons set forth, the decision of the Bankruptcy Court is hereby AFFIRMED as to all issues appealed.

DATED this 12 Day of September 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE